SMITH v. PATTON. See Case No. 13,078.

## Case No. 13,089.

SMITH v. PEARCE et al.

[2 McLean, 176;[1] 2 Robb, Pat. Cas. 13.]

Circuit Court, D. Ohio. July, 1840.

PATENTS—REISSUE—IMPROVEMENT IN PATENTED MACHINE—ALTERATION—PRINCIPLE IN MACHINE.

1. Where the specifications of a patent are defective, under the late act of congress [5 Stat. 353] a new patent may be obtained with corrected specifications, which relates back to the date of the original patent.

[Cited in Hussey v. Bradley, Case No. 6,946; House v. Young, Id. 6,738.]

2. A patent for an improvement in a machine, which had been previously patented to another person, can not protect the right of the patentee, unless the improvement be substantially different in principle from the original invention.

3. An alteration merely formal, or a slight improvement, will give no right.

[Cited in brief in Tillotson v. Ramsay, 51 Vt. 311.]

4. The jury will determine, from the models exhibited, and the other evidence, whether there is a difference in principle between the two machines. That is called principle in a machine which applies, modifies, or combines mechanical powers to produce a certain result.

[This was an action by Jesse C. Smith against John Pearce and H. Pearce for the infringement of letters patent granted to plaintiff January 29, 1830.]

Mr. Fox, for plaintiff.
Mr. Green, for defendants.

OPINION OF THE COURT. This action is brought for the infringement of a patent right, by the defendants, claimed by the plaintiff. The plaintiff's patent is dated 25th September, 1837, and, under the late act of congress, relates back to the 29th of January, 1830, the date of his first patent, for the same invention, which was invalid by reason of a defective specification. In the specification, or schedule, the plaintiff claimed to have invented a "new improved mode of grinding, holding, and accommodating millstones," for grinding grain, &c. "The nature of the invention consists in the peculiar construction of the husk or frame, to be used for the purpose of accommodating and securing millstones for grinding grain into meal or flour, or any other business calculated to be done under the operation of grinding. The husk or frame is made of iron, compact and firmly secured together by bolts. The mills are calculated to be transported with safety, all finished in a perfect and workmanlike manner ready for grinding. They are to be put in motion either by straps or cog-gearing, whichever the purchaser shall choose." A drawing with a particular description accompanied the application for a patent.

The defendants pleaded not guilty, and

[1] [Reported by Hon. John McLean, Circuit Justice.]

gave in evidence a patent to Henry Pearce, one of the defendants, for an improvement upon the plaintiff's patent. In the specification the improvement is stated to "consist in the manner in which the patentee constructs the part which he denominates the pressure rod, which is intended to elevate the bridgetree, and, consequently, the running stone, and to regulate the action of the mill in that particular part." This specification was, also, accompanied by a drawing.

Several machinists, and other witnesses, testified that the invention of the plaintiff was of great utility. That each run of stones would make thirteen barrels of flour in twenty four hours, and that the flour is of a better quality than that which is manufactured in the ordinary way, and sells higher. That a steam engine of fourteen horse power, which will consume a small amount of fuel, will be sufficient to turn five pairs of stone. The plaintiff, also, proved that for some years the defendants had been engaged in making mills on the same principle as the plaintiff's patent, for sale; and that he had sent great numbers of them to Mississippi and Louisiana; also, some evidence as to the profit on the mills thus constructed and sold.

The principal question in the case is, whether Pearce's improvement on the plaintiff's patent is such as protects him in the right which he has exercised. That part of the plaintiff's patent which he claims to be new, and of his own invention, is "connecting the bridgetree with the top part of the frame, or whatever may be used as a substitute, in the manner herein described, or any other manner embracing the same principles and producing the same effect. And the mode or manner of depressing, as well as elevating, the running stone by application of the screw to the bridgetree, in the manner here described, or any other producing the same effect." A slight alteration in the structure of a machine, or in the improvement of it, will not entitle an individual to a patent. There must be a substantial difference in the principle, and the application of it, to constitute such an improvement as the law will protect. The principle here spoken of is not a new mechanical power. For centuries no new power in mechanics has been discovered. But the powers known have been so modified and combined as to produce results the most extraordinary. Results which have distinguished the present age. The principle consists in the mode of applying or combining mechanical powers which produce a certain result. The law which secures to the inventor the exclusive benefit of disposing of his invention, for a term of years, is founded upon considerations of sound policy. And the right, thus secured, is not to be destroyed by open infraction, or a mere colorable improvement. The jury are to judge by an inspection of the models and from the evi-

dence, whether the two machines differ in principle.

Nothing is more common than for persons, skilled in the structure of machines, to disagree in regard to the principles of them. As it respects their form there can be but little difference of opinion among those who examine the machines. In this case machinists, who have been sworn as witnesses, do not agree, but the greater number seem to think that there is no substantial difference, in principle, between the two structures. In their form the machines are alike. Indeed, it would seem to require a nice observer to point out the difference. The principle of elevating and lowering the upper stone seems to be that which is new, and which gives value to the machine. And it will be for the jury to say, whether the rod with screws at both ends of it, by which the bridgetree, and, consequently, the upper stone is elevated or lowered, is not in principle the same, whether it rests by a shoulder on the middle or lower part of the frame, or whether, in fact, there be one rod or two.

The main question is, whether the principle, by which the upper stone is elevated and lowered, is substantially the same in both machines. If this be the case, your verdict must be for the plaintiff, with such damages as you shall think him entitled to. There are some cases of violation of patent rights more aggravated than others. And the court would remark to the jury, that, in the present case, there do not seem to be any circumstances which should much, if any, increase the damages beyond what may be supposed the reasonable profit of the defendants in manufacturing and selling the machine in question. The defendants may have supposed they were protected under their patent. But if the jury shall think, on a full view of the case, that there is not a mere formal difference, but a substantial one, in the principles of the machines, they will find for the defendants. Treadwell v. Bladen [Case No. 14,154]; Phil. Pat. 372; Davis v. Palmer [Case No. 3,645]; Evans v. Eaton [Id. 4,560]; 3 Car. & P. 502; Evans v. Eaton [Case No. 4,559]; Gray v. James [Id. 5,719]; Whittemore v. Cutter [Id. 17,600].

The jury found for the plaintiff, and assessed his damages at $2,150, on which judgment was entered.